# Federal Defenders

## OF NEW YORK, INC.

Southern District
81 Main Street, Suite 124
White Plains, NY 10007
Tel: (914) 428-7124 Fax: (914) 948-5109

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

July 14, 2025

**VIA EMAIL**

The Hon. Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas St.
White Plains, New York 10601

   **Re: *United States v. John Lord*, 7:25-cr-149 (NSR)**

Dear Judge Román,

  John Lord is a 41-year-old man with no criminal record who feels deep remorse for his conduct. He waived indictment and pleaded guilty to a one-count information alleging enticement of a minor, in violation of 18 U.S.C. § 2422(b).

  I respectfully request that Mr. Lord be sentenced to 10 years, plus a lengthy term of supervised release. This requested sentence is supported by four main arguments.

  First, Mr. Lord has no criminal record whatsoever. He is a zero point offender.

  Second, he immediately accepted complete responsibility waived indictment, and pleaded guilty as soon as possible. He has also expressed sincere remorse and profound shame for his conduct.



  Fourth, a 10-year sentence avoids unwarranted sentencing disparities between state and federal defendants. As this Court knows, Mr. Lord was initially charged in state court for the exact same conduct. PSR at 1, ¶ 42. Had this case been adjudicated there, he would be facing a much less severe sentence of 0 to 4 years. Yet, the federal government exercised its power to charge this case such that Mr. Lord, who has zero criminal history points and wanted to accept immediate responsibility, was required

to plead to a 10-year mandatory minimum with startlingly high guidelines.

For the reasons set forth in this sentencing letter, the Court should exercise its considerable discretion and vary downward from the empirically hollow Guidelines. A 10-year sentence fulfills the four goals of sentencing: deterrence, rehabilitation, retribution, and incapacitation. Plus, upon release, Mr. Lord will be a first-time felon, a registered sex offender, and serving at least 10 years of supervised release. Such a sentence is sufficient but not greater than necessary.

## I. <u>PSR additions</u>

Defense counsel requests two additions to the Final Presentence Report.

First, attached at Exhibit E is proof of Mr. Lord's high school equivalency diploma (GED), which will lower his BOP security level. Counsel did not have a copy of this document until recently.

Second, defense counsel requests that the following "bolded" language be inserted on Page 1. Under the paragraph "Release Status," the PSR should state: The defendant was arrested by state authorities on August 20, 2023 and remanded. **This arrest is based on the same conduct charged in the instant offense.** *See* **Paragraph 42,** *infra*. He was produced on a writ to this Court on August 31, 2023, and remanded.

## II. <u>Background</u>

As discussed in detail in the attached letter from Federal Defender of New York's social worker, Juliet Vicari, MSW, █████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████ Letter to Shaun Werbelow from Social Worker Juliet Vicari (Aug. 6, 2024) ("Vicari Letter"), attached as Exhibit C at 2.

His little brother, Edward, explains how John "put food on the table and took care of us" even though Mr. Lord was still a child himself. PSR ¶ 56. Edward recalls how Mr. Lord would "sit at the window waiting for our parents to come home from the bar at 3 am to make sure they got home safely." Letter from Edward Slater, attached at Exhibit D.

As a young adult, ████████████████████████████████████████████ ██████████████████████████████████████████████████████████ PSR ¶ 52.

[REDACTED]

Around this time, at age 18, he also began seeing his mother again. PSR ¶ 50. She was very ill, but was the only family member who was supportive [REDACTED] " PSR ¶ 52; Vicari Letter at 3.

In 2017, around age 30, Mr. Lord began dating his boyfriend, Tony, with whom he would move out to Arizona. Tony was just one of Mr. Lord's long-term boyfriends, all of whom were age appropriate males. Tony and Mr. Lord stayed in Arizona for many years. They lived together near the Grand Canyon and both worked at the famous El Tovar Hotel. The hotel is perched on the Canyon's rim and is reserved months, if not years, in advance. Mr. Lord proudly worked as a server in the hotel restaurant. He describes his time in Arizona as fairly idyllic. Vicari Letter at 5.

When Mr. Lord and Tony broke up in 2022, Mr. Lord did not handle the breakup well. [REDACTED]g. After a brief six-month period in Arizona during which he engaged in a disastrous rebound relationship (discussed in depth in Social Worker Vicari's letter, Exh. C at 6), he moved back to New York and lived with his brother, Eddie. It was while he was living at Eddie's house that he engaged in the offense conduct.

## III. <u>The offense conduct</u>

Mr. Lord takes full responsibility for his offense conduct. He was extremely frank and candid in his lengthy interviews with Dr. Bardey and Social Worker Vicari. As noted above, before the instant offense, Mr. Lord had always entered into age-appropriate, lengthy, and monogamous relationships. When Mr. Lord came back to New York and lived with his half-brother, he was single for the first time in years.

He went onto Grindr, which is "the world's largest social networking app for gay, bi, trans, and queer people." *See* www.grindr.com. The website's first "community guideline" is its age restriction, which states that the site is for "adults only," which it defines as "18, or older in certain jurisdictions." *See* www.grindr.com/community-guidelines. To create an account, the putative user must provide a date of birth. Only users 18 or older are permitted to complete the sign-up process. *Id.*; PSR ¶ 9, n.1 (confirming that the dating application requires that all users "verify they are over the age of 18.").

Mr. Lord created an account and began talking with a number of different men, including the victim. As noted in Exhibit C, Mr. Lord had just emerged from two bad break ups and was looking for casual relationships. The victim's profile stated that

he was 19. Mr. Lord noted that 19 was far younger than his typical paramours' ages, but Mr. Lord believed the profile was legitimate.

Between August 7, 2023 and the date of his arrest, August 30, 2023, he and the victim engaged in sexual acts. There were clues that the victim was not 19 years old, but Mr. Lord was unsure until, on August 29, 2023, the victim confirmed his minor status by revealing that he was 15. And yet, Mr. Lord met up with the victim the next day, engaged in a sexual act, and was arrested after the victim's mother used her son's cell phone to track him down.

Mr. Lord fully accepts responsibility for remaining in a sexual relationship with the victim, but vehemently denies that he intentionally sought out an underage individual. Bardey Eval'n at 6. His brother, with whom he was living, confirmed that Mr. Lord has never indicated or exhibited any sort of interest in underage partners, noting that "it's always been older gentlemen that John was interested in." Bardey Eval'n at 15.

## IV. An expert evaluation concluded that the instant offense was an "aberration" and is "not reflective of a pattern of abuse."



This conclusion takes this case outside the heartland of most enticement cases. Mr. Lord was not trawling the internet for underage partners or engaging in any grooming exercise.

Mr. Lord expresses his remorse in his letter to the Court. There, he says:

In the letter, Mr. Lord takes full responsibility for his conduct.  Below is an excerpt:

> With a heavy regretful heart I am sincerely sorry for everything right from where it all started on the dating sight. I am sorry for even saying hello to the victim. I'm sorry I let our communications progress. I'm truly sorry for crossing all the boundaries I crossed. I seriously wish I didn't. **I'm deeply sorry I used pervasive, vulgar, disgusting and sexual words, actions, images, and videos**. I'm truly sorry for sending all the messages I sent. I'm sorry for the content that the messages consisted of. It's all so graphic, disgusting, and revolting. I make myself sick.
>
> I wish I could take it all back and fix everything. My decisions and mistakes have destroyed me on the inside. I deserve to feel the way that I do. I am loving, caring, thoughtful, and sensitive person and **it eats me alive every day to know the hurt, pain and suffering I have caused**. I wish I could take it all away. I promise this will never happen again.

Letter from John Lord, attached at Exhibit A, at 2 (emphasis added).

## V.  <u>A 10-year sentence will avoid unwarranted sentencing disparities, provide adequate general and specific deterrence, and allow Mr. Lord to receive trauma-informed therapy as soon as possible.</u>

A 10-year sentence will avoid unwarranted sentencing disparities. First, similar federal cases have resolved in 120 month sentences, or less. For example, in *United States v. Hughes*, the defendant, a priest, solicited and received naked photos from a 15-year-old minor who he met on Grindr.  21 Cr. 584 (PMH) Gov't Sent'g Mem. at 1. The defendant also "engaged in at least one in-person sexual encounter with an individual he believed to be approximately 15-years-old." *Id*. at 4.  Notwithstanding this gross abuse of trust and multiple illegal acts with *two* minors, the defendant received a five-year sentence. Docket No. 65 (Judgment).

Likewise, in *United States v. Pope*, 23 Cr. 58 (NSR) the defendant, a longtime baseball coach for high school and youth teams, "engaged in oral and anal sexual conduct" with a 15-year-old minor multiple times over several months. In addition, Pope used his cell phone to request (and receive) explicit pictures and videos of the victim. Gov't Sent'g Mem. at 2-4.  His guidelines were 188 to 235 months. Unlike here, where Lord plausibly believed at the onset that the victim was 18, Pope knew exactly how old the victim was when the conduct began because he (Pope) had coached the victim's baseball team just a few years before. *Id*. at 4. The Court imposed

a 10-year sentence. Docket No. 54 (Judgment).[1]

Similarly, in *United States v. Rivera*, 243 Cr. 238 (PMH), the defendant traveled from Florida to New York where he had arranged to meet a girl he knew to be in middle-school. The defendant picked her up at her house and brought her to a hotel room to engage in sex. The police received a tip that the girl was about to be raped and entered the hotel room before the sex occurred. He had also requested that the 13-year-old girl send him explicit photos.  The Court imposed a 120-month sentence. Docket No. 55 (Judgment)

Like the defendants in the above cases, Mr. Lord engaged in sexual contact with a minor. Here, however, Mr. Lord was not immediately aware of the victim's age because they had met on Grindr. Moreover, the entire interaction between Mr. Lord and the victim occurred over about 20 days, not months or years as in these other cases. I am not trying to minimize his conduct, but it bears noting that the defendants in the above three cases engaged in production or attempted production. Yet, the government did not assess production guidelines in those cases (or an abuse of trust enhancement, even though it should have applied to a priest and a coach).  Moreover, Mr. Lord's conduct is not substantially more serious than the conduct in any of the above cases. Thus, his sentence should be commensurate with those imposed above.

The sentencing disparities become even starker when the instant guidelines (292 to 360 months) are compared to the sentence Mr. Lord would be facing in State court for the *exact* same conduct. In the State, he was charged with a Class E felony, which carries a sentencing range of 0 to 4 years. PSR ¶ 42. Here, the guidelines recommend a sentencing range of 292 to 365 months (24 to 30 years).  Even the probation officer's recommendation of 17 years (204) months is *four times* more than the *highest* possible State sentence. The disparity is staggering.

Second, a ten-year sentence fulfills the need for general and specific deterrence.  The community at large, including those who use Grindr, will learn that any interaction with a young person puts them at risk of a felony conviction, sex offender registration, 10 years in prison, and 10 years of federal supervision. These consequences are enough to deter anyone from committing the same crime.

As for specific deterrence, a sentence greater than ten years would serve no penological purpose, especially in light of the fact that this is Mr. Lord's first offense. *See United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir.2001) (explaining that a shorter sentence now "might be expected to have the requisite deterrent effect" where defendant has previously served "no time or only a few months for the prior offenses"); *United States v. Qualls*, 373 F.Supp.2d 873, 877 (E.D.Wis.2005) ("Generally, a lesser

---

[1] Inexplicably, neither the government nor the probation officer assessed a production cross-reference under the U.S.S.G. in the *Pope* case.  Had they done so, Pope's guideline range would have mirrored Lord's guideline range.

period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

Finally, trauma-informed therapy is unavailable in the Bureau of Prisons. A ten-year mandatory minimum sentence will allow Mr. Lord to obtain this treatment as soon as possible. Indeed, as part of his supervised release following imprisonment, Mr. Lord will be required to participate in targeted, sex offender-specific programming in the community plus trauma-informed treatment. Moreover, on supervised release, he will be subject to the usual conditions established for sexual offenders, including internet monitoring. Further, Mr. Lord's family members are committed to helping him succeed and would support him throughout his treatment. As noted, his brother and sister-in-law are fully aware of the pending charges and remain staunch supporters. Their letters are attached at Exhibit D.

## <u>CONCLUSION</u>

Mr. Lord is deeply ashamed of his actions. He fully understands and accepts the damage his actions have caused. But this chapter will remain a historical, and isolated, one for Mr. Lord. In light of his lack of criminal record, the challenges he faced, his amenability to treatment, and his low-risk of re-offense, I strongly urge the Court to impose a ten-year sentence, which is more than double the maximum sentence he could have received in the State.

Thank you very much for your consideration of this request.[2]

---

[2] The Court should adjust Mr. Lord's sentence to ensure that he receives credit for the two years of incarceration he has already served in State custody. *See* Application Note 2(C) to USSG § 5G1.3(b) ("If subsection (b) applies, and the court adjusts the sentence for a period of time already served, the court should note on the Judgement in a Criminal Case Order (i) the applicable subsection (e.g. § 5G1.3(b)); (ii) the amount of time by which the sentence is being adjusted; (iii) the undischarged term of imprisonment for which the adjustment is being given; and (iv) that the sentence imposed is a reduction pursuant to § 5G1.3(b) for a period of imprisonment that will not be credited by the Bureau of Prisons").  For example, in the case of *United States v. Pope*, the Court inserted this language into the judgment to ensure credit for time served in State custody that would otherwise be "uncounted."

Sincerely,

*Rachel Martin*

———————————————
Rachel Martin, Esq.
Assistant Federal Defender
Counsel for John Lord

DEFENDANT:   ROBERT POPE
CASE NUMBER:   7:23Cr.00058-01 (NSR)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
One Hundred Twenty (120) Months on one count of conviction to be served concurrently with the anticipated term of imprisonment in Westchester County Court Docket No. 00449-2021, pursuant to USSG § 5G1.3(c). Defendant shall also receive credit for 38 days in New York State custody for relevant conduct. Defendant advised of his right to appeal under the plea agreement.

8

**<u>Exhibits</u>**

Exhibit A:    Letter from Mr. Lord
Exhibit B:    Psychiatric Evaluation by Dr. Alexander Bardey (Apr. 26, 2024)
Exhibit C:    Report of Social Worker Juliet Vicari, MSW
Exhibit D:    Letter from Edward Slater; Letter from Melissa Slater
Exhibit E:    High School Equivalency Diploma